RECORD NO. 15-2182

In The

# United States Court of Appeals
### For The Fourth Circuit

## WELLS FARGO EQUIPMENT FINANCE, INCORPORATED,

*Plaintiff – Appellee*,

**v.**

## NABIL J. ASTERBADI,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT**

_____

## REPLY BRIEF OF APPELLANT

_____

On Brief:

| | |
|---|---|
| **David B. Lamb** | **David A. Donohoe** |
| DAVID A. DONOHOE, ESQUIRE | DAVID A. DONOHOE, ESQUIRE |
| **1740 N Street, NW, Suite 1** | **11009 Homeplace Lane** |
| **Washington, DC  20036** | **Potomac, Maryland  20854** |
| **(202) 785-7822** | **(410) 581-7400** |
| | |
| *Counsel for Appellant* | *Counsel for Appellant* |

## Table of Contents

**Page**

Table of Authorities ................................................................................. ii

I.     The Appeal Should Not Be Dismissed............................................1

II.    Standing ...........................................................................................4

III.   Commencement of Statute of Limitation on Registered Judgments ..............6

IV.    What Should be the Law in Maryland ...........................................13

V.     Conclusion .....................................................................................20

Certificate of Compliance

Certificate of Filing and Service

# Table of Authorities

Page(s)

## Cases

*Bank v. Yoo*,
    2005 WL 3817602 (Md. Cir. Ct. 2005) ........................................................15

*Blundon v. Taylor*,
    364 Md. 1, 770 A.2d 658 (2001).....................................................................5

*Ferraro v. Comptroller of Treasury*,
    No. 0003 SEPT. TERM 2015, 2016 WL 116021
    (Md. Ct. Spec. App. Jan. 11, 2016)..............................................................19

*Home Port Rentals, Inc. v. International Yachting Group, Inc.*,
    252 F.3d 399 (5th Cir. 2001)................................................................. *passim*

*Marx v. Go Publishing Company, Inc.*,
    721 F.2d 1272 (9th Cir. 1983)................................................................ *passim*

*Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America*,
    356 Md. 542, 741 A.2d 462 (1999)........................................................16, 18

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)..............................................................................4

*Stanford v. Utley*,
    341 F.2d 265 (8th Cir. 1965)................................................................. *passim*

*State ex rel. Lennon v. Strazzella*,
    331 Md. 270, 627 A.2d 1055 (1993)........................................................... 4-5

*Weiner v. Blue Cross of Maryland*,
    730 F. Supp. 674 (D. Md. 1990) ...........................................................16, 17

ii

**Statutes**

28 U.S.C. § 1963 ..................................................................... *passim*

28 U.S.C.A. § 1291 ...............................................................3, 4

La. Civ. Code Ann. art. 3501 ................................................12, 13

Md. Code, Cts. & Jud. Proc. § 5-102........................... *passim*

Md. Code, Cts. & Jud. Proc. § 11-801 et seq. .....................15

Md. Code, Cts. & Jud. Proc. § 11-802 ...................... 14, 15, 16

Md. Code, Cts. & Jud. Proc. § 11-802(b) .............................18

Md. Code, Cts. & Jud. Proc. § 11-805 .................................14

Md. Code, Cts. & Jud. Proc. § 11-805(b) .............................20

Md. Code, Cts. & Jud. Proc. § 11-902 .................................15

Miss. Code § 733 ...................................................................7

Mo. Ann. Stat. § 511.760...................................................7-8

Mo. Code § 516.350 ...............................................................8

**Rules**

Md. Rule 2-625 ....................................................................15

Md. Rule 2-642 ..................................................................3, 5

# I.    The Appeal Should Not Be Dismissed

Wells Fargo argues in its brief that Asterbadi's appeal should be dismissed because Judge Grimm's Opinion and Order only granted in part and denied in part Appellee's Motion for Permanent Injunctive which was filed on October 31, 2003 (JA 2, Docket Entry 3) and that Judge Grimm denied the Motion for Protective Order, where the statute of limitations issue was raised, in a paperless order entered on October 14, 2015 (JA 4, Docket Entry 30). Essentially Wells Fargo argues that Asterbadi appealed the wrong order.

In order for this Court to consider this issue the Court should review the procedural context in which Judge Grimm entered his Opinion and Order. On May 8, 2015 Asterbadi filed a Motion for Protective Order and for Other Ancillary Relief which sought an order enjoining Wells Fargo from pursuing post judgment discovery in aid of execution on their 20 year old Virginia federal court judgment. The motion also asked for a declaration that the judgment was no longer enforceable. Wells Fargo responded to the motion and Judge Grimm entered an order on May 28, 2015 (JA 3, Docket Entry 18) wherein he stated that Asterbadi was arguing that the 1993 Judgment was no longer enforceable, more than twenty years after its entry, and that Wells Fargo had opposed the motion without addressing the issue of enforceability. Judge Grimm further concluded that the issue of enforceability must be addressed before he decided the post judgment

discovery issues. Judge Grimm ordered Wells Fargo to Show Cause by June 17, 2015 why the matter should not be subject to dismissal for reasons stated in Asterbadi's motion. The Motion for Permanent Injunction and Motion for Protective Order remained pending. (JA 27-28, Docket Entry 18).

Wells Fargo filed its Memorandum of Law in response to Judge Grimm's order and briefed the issue of the expiration of the judgment relying on the very same cases that it now relies on in its brief in this appeal. Asterbadi filed his Reply and addressed at length the conflicts of law issue dealing with the registration of the Virginia federal judgment in Maryland and whether it resulted in the Maryland statute of limitation beginning anew with the registration and whether under Maryland law, did Wells Fargo have standing because it had failed to file the assignment in the clerks' office as required by Maryland law which would have allowed it to proceed with collection in its own name.

Wells Fargo now argues that Asterbadi failed to preserve the limitations and standing issues for appeal notwithstanding the fact that Judge Grimm addressed both the standing issue and the statute of limitations issues in his Memorandum Opinion and Order. At best Wells Fargo might argue that the Notice of Appeal was somehow premature. The true question is whether the issues now on appeal were properly raised in the trial court and whether the trial court ruled on the issues raised below.

Wells Fargo's counsel suggests that the time for appeal from the denial of the protective order was as of the date of the order docketed on October 14, 2015 and not from Judge Grimm's Opinion and Order that was entered on the docket on September 16, 2015. Counsel chooses to ignore that Judge Grimm specifically ordered Wells Fargo to respond to the statute of limitations issue in his order of May 28, 2015 and then addressed the standing and the statute of limitations issues in his opinion. He first found that Wells Fargo had standing under Md. Rule 2-642 and he then considered the enforceability issue, ruling as a matter of first impression in Maryland that the statute of limitations started to run on the date the judgment was registered in his court and as a result the judgment was enforceable. The Court then went on to consider Wells Fargo's request for injunctive relief which had been filed in 2003 and never decided. He granted the Motion for Preliminary Injunction in part and denied it in part. Having decided the issues of standing and enforceability which were raised in the Motion for Protective Order as well as having been briefed as ordered by Judge Grimm in the order to show cause, the court, following Asterbadi's noting of his appeal from his Opinion and Order, entered a paperless order denying Asterbadi's motion for protective order without prejudice in that it was essentially moot as the result of his opinion.

"The courts of appeals. . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States. . . 28 U.S.C.A. § 1291. A

decision is final for purposes of § 1291 if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Where an Opinion and Order forms the sole basis for the arguments raised on appeal the Court has jurisdiction to review a district court's decision so long as "the intent to appeal from that decision is clear on the face of, or can be inferred from, the notice of appeal. The notice of appeal is construed taking the parties' intentions into account." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 62, 63 (2d Cir. 2010).

In this case there can be no question as to what issues are being appealed. Asterbadi raised the statute of limitations and enforceability issues in his Motion for Protective Order and for Other Ancillary Relief which included a request for a declaration that the Virginia federal judgment that had been registered be declared unenforceable. The issues of standing and enforceability where further briefed in the Reply filed in response to Judge Grimm's show cause order and the issue of standing was addressed further in the Supplement which was filed. Judge Grimm addressed the issues in his Opinion and Order and the appeal was taken from the Opinion and Order.

## II.    Standing

"To interpret rules of procedure Maryland Courts use the same canons and principles of construction used to interpret statutes." *State ex rel. Lennon v.*

*Strazzella*, 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993). "In our effort to discern the meaning of a rule, we look first to the words of the rule. When the words are clear and unambiguous, ordinarily we need not go any further.... Only when the language of the rule is ambiguous is it necessary that we look elsewhere to ascertain legislative intent.... We are also to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used.... Finally, we seek to give the rule a reasonable interpretation, not one that is illogical or incompatible with common sense...." *Blundon v. Taylor*, 364 Md. 1, 7-8, 770 A.2d 658, 661-62 (2001).

Md. Rule 2-624 provides: "When a judgment has been assigned in writing by the judgment holder, the assignment may be filed in the court where the judgment was entered and in any court where it has been recorded. **When an assignment is filed, the judgment may thereafter be enforced in the name of the assignee to the extent of the assigned interest**." (Emphasis added). Md. Rule 2-624.

The rule is clear and unambiguous. When a judgment has been assigned **and the assignment filed with the court**, then the assignee judgment creditor can pursue post judgment discovery in its own name. (Emphasis added). The issue is not whether there was a valid assignment. Instead, the issue is whether the assignee judgment creditor has standing to do anything until it files the assignment

with the court. Until that date only the true judgment creditor can pursue the rights available under the rules dealing with post judgment collection. In this case there is no explanation in the record as to why the assignment was not filed until 2015 when it is clear that the assignment was effective in 2007.

This case exemplifies the reason why the assignment needs to be filed. A review of the assignment document that was filed in 2015 with the Montgomery Circuit Court is lacking in specificity as to whether there was a judgment against Asterbadi as opposed to the named debtor, Washington Capital Aviation. (JA 36). The assignment is vague and inherently deficient as to what was being assigned and which could not be cured by the after the fact affidavit of the assignee as opposed to the assignor. (JA 37).

## III.    Commencement of Statute of Limitation on Registered Judgments

Wells Fargo and Asterbadi are in agreement that under 28 U.S.C. § 1963 Maryland's statute of limitations on enforcement of judgments controls, not Virginia's. It is also undisputed that the only Maryland Code provision that is applicable is Md. Courts and Judicial Proceedings Article, § 5-102 which provides that an action on a judgment shall be filed within 12 years "after the cause of action accrues." The disputed issue is at what point does the statute commence. Does it start upon rendition of the judgment or upon registration in Maryland?

Wells Fargo argues that the decisions starting with *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965) as applied in *Marx v. Go Publ'g Co.*, 721 F.2d 1272 (9th Cir. 1983) and *Home Ports Rentals, Inc. v. Int'l Yachting Group, Inc*., 252 F.3d 399 (5th Cir. 2001) control the outcome in this case. Wells Fargo suggests that the consensus of the federal appellate courts that have examined registration under 28 U.S.C. § 1963 have held that the registration "creates what is effectively a new judgment, as of the date of registration, in the registering court and which is governed by the laws of the district of registration," (Appellee Brief P. 20). In fact the interpretation of state law governs. In short there is no Maryland precedent on point with the result that all authorities are persuasive as opposed to controlling. With that in mind the issue is how would the Maryland appellate courts decide the issue in a case of first impression.

Any analysis must begin with an understanding how the courts that have considered the issue got to their conclusion. The starting point for purposes of § 1963 is the opinion in *Stanford v. Utley*. In *Stanford* the judgment creditor obtained a judgment in Mississippi and immediately registered it under § 1963 in Missouri. Mississippi had a statute that provided that an action on a judgment had to be brought within seven years after its rendition. Miss. Code § 733. The court found that Missouri had five statutes that had some applicability. Missouri had adopted the Uniform Enforcement of Foreign Judgments Act in 1951 V.A.M.S.

§ 511.760. UEFJA as adopted preserved the traditional common law judgment creditor's right to bring an action on a foreign judgment. Missouri Code § 516.350 provides for a conclusive presumption of payment of a judgment ten years after rendition. The registered judgment was enforceable in both Mississippi and Missouri when it was registered in Missouri. The Stanford court observed that it was confronted with collection procedures in Missouri more than seven years after rendition in Mississippi which had the seven year statute and less than ten years after rendition which was Missouri's statute. The result was that if the law of the rendering state was applied, the statute had run and if the law of the registering state controlled, the judgment was viable in Missouri. The Stanford court concluded that it was essentially conceded that the purpose of the statute was to simplify enforcement of federal judgments. *Id*. 270. The Court conceded further that the legislative history of § 1963 was not helpful resolving the intent of the section and that it believed without holding such that § 1963 was broader than a mere ministerial enforcement aid while recognizing that some courts disagreed, concluding it was ministerial. Citation omitted. *Id*. 268. The Court went on to find that for enforcement purposes the registration in Missouri under § 1963 equated with a new Missouri federal judgment "on the original Mississippi federal judgment, that is, it is no different than a judgment timely obtained by action in Missouri federal court on the Mississippi judgment." *Id*. 269. The result was

8

therefore that the Missouri ten year statute applied, as opposed to the Mississippi seven year statute. In that the Court was in new and uncharted territory it qualified its ruling by stating: "We do not go so far as to say that the registration effects a new judgment in the registration court for every conceivable purpose; neither do we say that if fails to do so for any particular purpose." *Id.* 271.

The Stanford Court did not reach the issue of when the statute would begin. It essentially ruled that the law of the registering state controlled. A conclusion the Asterbadi agrees with. In that statutes of limitation are procedural rather than substantive, the law of the forum generally would have controlled in any event. The remainder of the Court's decisions was actually not necessary to the conclusion reached yet it has been used as the cornerstone for decisions by courts that have considered the effects of registration and have adopted the legal proposition that the registration of the foreign judgment results in a new judgment which commences anew the registering states's statute of limitations on enforcement of the judgment from the date of registration, not rendition.

In 1983 the Ninth Circuit decided *Marx v. Go Publishing Company, Inc*., which is relied on by Wells Fargo. The Marx Court dispensed with any legal analysis of the federal law and reached its conclusion in a very brief two page opinion which piggybacked on California state statutes. In the absence of the California statutes the result would probably have been different.

In *Marx* the court simply followed the California statutory law as to when the statute of limitations on a registered foreign judgment would run. The judgment creditor had obtained a judgment in the federal court in the District of Columbia and had registered it in California. California law provided for a period of ten years for enforcement of judgments. The court concluded that the issue presented was whether registration created a "new judgment." Relying on California law the court held that "under analogous California law, the ten year period for a valid and enforceable judgment of a sister state runs anew from the time of its filing in the state superior court provided that at the time of registration the judgment is not time barred." *Id.* 1272. *Marx* was a state law specific decision and California law covered the result. Maryland has no statute or doctrine that corresponds to the California statutes relied upon in *Marx*.

Next in the line of cases relied upon by Wells Fargo is *Home Port Rentals, Inc. v. International Yachting Group, Inc.*, 252 F.3d 399 (5th Cir. 2001). This is the case most heavily relied upon by Wells Fargo. As with *Stanford* and *Marx* state law was the controlling factor which is the result that should be applied in this case. Because it is offered as persuasive authority it is essential to understand exactly what the Home Port Court decided and whether it is good law in this case.

In *Home Port* the judgment creditor obtained a judgment in 1989 in South Carolina. In 1999, three days prior the tenth anniversary of the entry of the

judgment in South Carolina the creditor filed two petitions to register the South
Carolina judgment in Louisiana under § 1963. Under both South Carolina and
Louisiana law the judgment was viable at the time of registration in Louisiana.
The Court observed that there was no Supreme Court authority and very little
appellate or district court authority. The Court turned to *Stanford* as the "landmark
case" and adopted from that opinion the legal proposition that the expiration of the
rendering state's statute of limitations after registration under § 1963 had no effect
on the registered judgment because the time is controlled by the registering state
after registration, a legal principle that Asterbadi also agrees with. The court
observed that it could find no authority to challenge the holding in *Stanford* that
registration was the equivalent to creating a new judgment in the registration court
for purposes of enforcement. Not even the Stanford Court could find such law to
support its legal position. The Home Ports Court reviewed the issues as to which
state's statute of limitations law applied and when did the statute of limitations
start. The Court dispensed with the first issue concluding that Louisiana's statute
of limitations law applied. Again, this legal conclusion Asterbadi agrees with. The
Court then turned to the issue of when the statute of limitation commenced. The
applicable Louisiana statute provides:

> A money judgment rendered by a trial court of this state is prescribed
> by the lapse of ten years from its signing if no appeal has been taken,

11

or, if an appeal has been taken, it is prescribed by the lapse of ten years from the time the judgment becomes final.

An action to enforce a money judgment rendered by a court of another state . . . is barred by the lapse of ten years from its rendition; but such a judgment is not enforceable in this state if it is prescribed, barred by the statute of limitations, or is otherwise unenforceable under the laws of the jurisdiction in which it was rendered. La. Civ. Code Ann. art. 3501

The Court ignored the governing Louisiana law (ten years from the rendition unless shorter) and instead turned to *Marx*, a case decided strictly on the wording of California statutes, in reaching a decision as to when the statute of limitations began to run in Louisiana under Louisiana law, the Court cited *Marx* stating: "Thus, in the only circuit that has squarely held just when it is that the statute of limitations applicable to registered judgments commences to run, the date on which a "live" judgment is registered was determined to be the appropriate date, irrespective of the date of entry of the underlying judgment or the date it became final." *Id.* 407. The Court ignored the fact that *Marx* was decided based on analogous California law and held that the two page opinion which contained no legislative analysis, was persuasive. Based on the misinterpretation of applicability of *Marx* and the holding in *Stanford*, which is distinguishable, the Home Ports Court concluded that the Louisiana statute of limitations applied and that it started with the date of registration notwithstanding a statute that said that actions on a foreign judgments rendered by a sister state are barred by the lapse of ten years

12

from its rendition. LSA-CC Art. 3501. It is also worthy of note that Article 3501
goes on to state that enforcement of a foreign judgment is barred if barred in the
state of rendition. The Court equated a registered judgment with a judgment from
a complaint on a judgment, holding that in Louisiana, because a registered
judgment is essentially the same as a judgment on a judgment, in Louisiana the
statute of limitations starts with registration. "The only thing that is governed by
the statute of limitations of the rendering court is the time during which a
judgment from the rendering court can be *registered* under § 1963 in the first
place. It has no bearing on enforcement once registration is accomplished." *Id.*
409. The Court in reaching its decision chose to disregard Louisiana Article 3501
which clearly states in a judgment on a judgment situation that if the judgment has
lapsed in the rendering state it is no longer enforceable in Louisiana. *Home Ports*
is a poorly reasoned opinion that starts out misapplying the decision in *Marx* and
then misinterprets Louisiana law.

### IV.    What Should be the Law in Maryland

Section 1963 of Title 28 of the U.S. Code became law in 1948. Maryland's
UEFJA became law in 1987. It must be assumed that the Maryland Legislature
was familiar with the analog provisions of Section 1963 when it adopted the
Uniform Enforcement of Foreign Judgments Act. The operative provision of the

statute applicable here is found in Courts and Judicial Proceedings § 11-802 which

provides in relevant part:

> (a)(1)(I) . . . a copy of any foreign judgment authenticated in accordance with an act of Congress or statutes of this State may be filed in the office of the clerk of a circuit court.
>
> * * *
>
> (2) The clerk shall treat the foreign judgment in the same manner as a judgment of the court in which the foreign judgment is filed.
>
> **Effect of foreign judgment**
>
> (b) A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed.

Neither 28 U.S.C. § 1963 nor Maryland's Uniform Enforcement Statute

purport to modify or interpret any statute of limitations provisions. Under

§ 11-805 of the Uniform Act a judgment creditor retains the right to bring an

action to enforce a judgment instead of proceeding under the subtitle. Maryland's

statute of limitations on actions on a judgment became effective in 1973 and

required that an action to enforce a foreign judgment in Maryland had to be filed

within twelve years of the **accrual of the cause of action** which would be from

the date the judgment was rendered in Virginia. *Maryland Code Courts and*

*Judicial Proceedings* § 5-102. In this case any Maryland suit on the Virginia

judgment had to be filed on or before October 3, 2005. That was not done. There is

14

no mention in the limitations provisions of § 5-102 about judgments registered in Maryland under § 11-802. In Maryland, judgments expire 12 years from the **date of entry** or most recent renewal. Md. Rules, Rule 2-625. It is also important to note that Maryland preserved the common law action on a judgment which provided a judgment creditor with a vehicle to extend the statute of limitations from the date of rendition of the judgment on the judgment.

The only Maryland case to address the issue of the statute of limitations on a registered judgment under § 11-902 is a Circuit Court opinion by Judge Sweeney in *Bank v. Yoo*, 2005 WL 3817602 (Md. Cir. Ct. 2005). In *Yoo*, a New York judgment creditor who obtained a judgment on April 26, 1989 in New York where the statute of limitation is twenty years, enrolled his judgment in Howard County by order dated September 15, 2005, more than twelve years after it was entered but less than twenty years after it was entered in New York. The judgment debtor sought to vacate the judgment because more than twelve years had passed since entry. Judge Sweeney observed that § 11-801 et seq. was silent as to any statute of limitations. He looked to § 5-102 and concluded that if § 5-102 was not applicable, a foreign judgment could end up remaining enforceable longer than a judgment entered in Maryland by a Maryland court. The plain language of the section referred to judgment which clearly would include a foreign judgment. Accordingly, he held that there was a twelve year statute of limitation applicable

15

to the foreign registered judgment and that the statute ran from the time it was entered in New York, not when it was enrolled in Howard County under § 11-802. He essentially treated a foreign judgment holder as a Maryland judgment creditor and concluded that the creditor has twelve years from the accrual of the cause of action on the judgment which was when the judgment was entered in New York, not enrolled in Maryland.

Judge Sweeney reached his conclusion six years after the Maryland Court of Appeals decided *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America*, 356 Md. 542, 741 A.2d 462 (1999). In *Mike Smith* the Court considered the effects of registration under § 11-802 on a Florida judgment. The Court reviewed the origin of UEFJA, concluding that it provided a speedy and economical method of enforcing a foreign judgment and it relieves creditors and debtors of the additional cost of further litigation. *Id.* 553. The Court looked to the decision by then district court Judge Neimeyer in *Weiner v. Blue Cross of Maryland*, 730 F. Supp. 674 (1990). Judge Neimeyer referred to *Stanford v. Utley* for the legal proposition that the judgment entered under § 1963 "was considered 'the equivalent of a new judgment of the registration court'" without acknowledging that the Stanford Court observed that there was little legislative history on § 1963 for the court to get guidance so the Stanford Court struck out on its own under the facts of the case before it. The Stanford Court stated that it "**felt**"

16

that the registration was equivalent to a new judgment, not that it was, and then qualified its holding by stating they were only concerned with registration having the same effect as a money judgment because in *Stanford* the rendering state had a seven year statute of limitations and the registration, Missouri, had a ten year statute. (Emphasis added). The court held that the Missouri statute applied and that registration and enforcement took place before the lapse of Missouri's statute. As previously pointed out, the Stanford Court stated that their holding did not "go so far as to say that the registration effects a new judgment in the registration court for every conceivable purpose; neither do we say that it fails to do so for any particular purpose" *Stanford*, 271. In *Weiner* Judge Neimeyer dealt with the issue of whether the federal removal statute applied to a registered judgment under § 1963 concluding that Maryland's UEFJA eliminated the need for a complaint on a judgment but it did not alter substantive rights or defenses otherwise available. The act was merely intended to streamline procedure but not alter a parties right to removal and the act of registration was equivalent to the filing of a new complaint for purposes of removal.

The Mike Smith Court drew upon *Weiner* for the proposition that UEFJA was to streamline the procedure, eliminating the requirement of a complaint on a judgment, without eliminating any substantive rights or defenses available under the independent action on a foreign judgment. Based on this the Court of Appeals

17

in *Mike Smith* disagreed with the Court of Special Appeals which had held that the registration of a foreign judgment under UEFJA was not a new judgment, holding that was an overstatement. *Mike Smith* 554. The Mike Smith Court went on to determine that notwithstanding registration of the Florida judgment in Maryland, if the judgment debtor satisfied the judgment in Florida it can interpose the defense of satisfaction to the registered judgment in Maryland as he could do if the proceeding was based on a complaint to enforce a foreign judgment. It would seem that the Mike Smith Court could have reached its decision as to the available defenses to a registered judgment under UEFJA by simply referring to the wording of the statute. The statute makes it clear that "[a] filed judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed." § 11-802(b). Accordingly the judgment debtor could raise the defense of satisfaction in proceeding to enforce a registered judgment. As a domesticated judgment the judgment would accrue interest at the Maryland judgment interest rate.

The core cases of *Stanford v. Utley*, *Marx v. Go Publishing Company, Inc*, and *Home Port Rentals, Inc., v. International Yachting Group, Inc.*, stand for the legal proposition that courts look to the law of the registration state for the purpose of the statute of limitations. If the state's registration or limitations

18

statutes cover the issue the statutes control. If the statutes do not clearly resolve the issue, then the court must determine what a Maryland Court would do if faced with the issue.

In Maryland the controlling statute is § 5-102. The limitation period on the enforcement of a judgment is twelve years after the cause of action accrues. As stated in *Ferraro v. Comptroller of Treasury*, No. 0003 SEPT. TERM 2015, 2016 WL 116021 (Md. Ct. Spec. App. Jan. 11, 2016):

> The wording of the statute is plain and clear. We begin the statutory interpretation process by looking line to the plain language of a statute, giving the words their natural and ordinary meaning. To determine the plain meaning of language, we consider the statutory scheme in which the particular provision or provisions appear. If the language is clear and unambiguous on its face, our inquiry ends. Id. 10.

It would be an unreasonable stretch of the meaning of the words as set forth in the statute to say that the intent of the legislature was twelve years from the date of registration as relates to foreign judgments. In this case the right accrued from the date the judgment was entered in Virginia (1993). It would be an unreasonable interpretation to give to a foreign judgment creditor benefits that would not be available to a Maryland judgment creditor. A Maryland judgment creditor has twelve years from when he got the judgment to enforce it while a foreign judgment creditor could wait twenty years, if the rendering state has a twenty years statute, and one day before the end of the twenty year period register the foreign judgment

19

in Maryland and have an additional twelve years from registration. If Maryland's legislature had intended this result they could easily handled the situation in one of two ways. They could have deleted § 11-805(b) and thus eliminated the alternative enforcement right that would have permitted a judgment on a judgment with a twelve year statute on the new judgment from the date the judgment was entered or it could have added language to § 5-102 that clearly stated that the statute of limitation on registered foreign judgments begins with registration.

## V.    Conclusion

This matter presents a case of first impression in Maryland. The parties are in agreement that this court must look to the laws of Maryland in reaching a conclusion on the issue of the statute of limitations that applies to the registration for foreign judgments in Maryland, whether they are registered under 28 U.S.C. § 1963 or under Maryland's version of UEFJA. IN the absence of controlling Maryland law this Court must determine what should be the law of Maryland which is a decision that should be left to Maryland and the Maryland Court of Appeals through a certification of the issue to that Court. If this Court decides to determine what the law should be, then a correct application of existing Maryland law should lead to the result that the statute of limitations commences when the judgment is rendered regardless of whether it is a domestic judgment or a registered foreign judgment.

Respectfully submitted

/s/ David B. Lamb
David B. Lamb, Esquire
1740 N Street, NW
Suite One
Washington, D.C. 20036
202-785-4822
Dbl@lambsoffice.com

David A. Donohoe, Esquire
11009 Homeplace Lane
Potomac, Maryland 20854

## Certificate of Compliance

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,166*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: February 5, 2016                    /s/ David B. Lamb
                                                           *Counsel for Appellant*

## Certificate of Filing and Service

I hereby certify that on this 5th day of February, 2016, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Steven N. Leitess
> LEITESS FRIEDBERG PC
> 10451 Mill Run Circle, Suite 1000
> Owings Mills, Maryland  21117
> (410) 581-7400
>
> *Counsel for Appellee*

I further certify that on this 5th day of February, 2016, I caused the required

copies of the Reply Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ David B. Lamb
*Counsel for Appellant*